# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

FRANCIS A. OAKES, III , OAKES
FARMS, INC. and SEED TO
TABLE, LLC,

      Plaintiffs,

v.                                                                    Case No: 2:20-cv-568-FtM-38NPM

COLLIER COUNTY,

      Defendant.

_____/

## OPINION AND ORDER[1]

Before the Court is Defendant Collier County's Motion to Dismiss (Doc. 68) and Plaintiffs' response in opposition (Doc. 69).  The Court grants the Motion.

## BACKGROUND[2]

This is a COVID-19 mask mandate case.  In July 2020, the County's Board of Commissioners passed an emergency order requiring everyone in

---

[1] Disclaimer: Documents hyperlinked to CM/ECF are subject to PACER fees.  By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide, nor does it have any agreements with them.  The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.

[2] These are the facts alleged in the operative Complaint (Doc. 67), which the Court accepts as true and views most favorably to Plaintiffs.  *White v. Lemma*, 947 F.3d 1373, 1380 (11th Cir. 2020).  The Court also considers the Complaint's exhibits.  Fed. R. Civ. P. 10(c) (Any "exhibit to a pleading is a part of the pleading for all purposes.").

certain businesses to wear face coverings ("Order 5").  Order 5 applied to unincorporated parts of the County—allowing incorporated areas (i.e., those within municipalities) to opt in.

Plaintiff Francis Oakes is a local businessowner.  Plaintiff Oakes Farms, Inc. runs a grocery store called Seed to Table in an unincorporated part of the County.  And Plaintiff Seed to Table, LLC is another of Oakes' entities.  Along with Seed to Table, Oakes owns other stores called Oakes Farms Market and Food and Thought.  Shortly after passing Order 5, the County cited Oakes Farms and Seed to Table (together, the "Stores") for mask violations.  Then, Plaintiffs sued on various federal and state law theories.

During the litigation, Order 5 expired and the County replaced it with Order 6.  When that expired, the County adopted Order 7, which expires in April 2021.  This new mask mandate is narrower, requiring face coverings in businesses "where social distancing is not possible." (Doc. 67-8 at 3).  What's more, in response to an executive order by Florida's Governor, Order 7 prescribes the County can only cite businesses—not individuals—for violations.

Given the shifting landscape, the Court held Order 7 mooted many of Plaintiffs' claims, but some survived that change. (Doc. 63).  In doing so, the Court held, one claim was sufficient, another wasn't, and the briefing insufficient on two others.  Plaintiffs amended.  Now, the Complaint has four

claims: (1) facial and as-applied equal protection challenges; (2) facial and as applied First Amendment attacks; (3) Florida administrative procedure violations in rulemaking; and (4) simple trespass.

## LEGAL STANDARD

A complaint must recite "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A facially plausible claim allows a "court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## DISCUSSION

### A. Equal Protection

Under the Fourteenth Amendment, no state can "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend

XIV, § 1. The Stores bring both a facial and as-applied equal protection challenge. The Court takes each in turn.[3]

### 1. Facial Challenge

The attack on Order 5 is moot. (Doc. 63 at 9). So this claim is limited to Order 7. The Stores challenge Order 7 facially under the Equal Protection Clause. In short, Order 7 passes muster.

"When a law does not infringe on a fundamental right or discriminate on account of a suspect classification, but instead is a general economic regulation, we review it only for a rational basis."[4] *Ga. Elec. Life Safety & Sys. Ass'n v. City of Sandy Springs, Ga.*, 965 F.3d 1270, 1275 (11th Cir. 2020). This review applies to statutes and local ordinances alike.[5] *Checker Cab Operators, Inc. v. Miami-Dade Cnty.*, 899 F.3d 908, 921 (11th Cir. 2018). The Stores do not contend they are part of a suspect class. Nor could they. *Talleywhacker, Inc. v. Cooper*, 465 F. Supp. 3d 523, 537 (E.D.N.C. 2020). Likewise, nobody argues

---

[3] The County does not challenge the Stores' standing on the Fourteenth Amendment claim. Yet federal courts always have an independent obligation to determine that question. *Ouachita Watch League v. Jacobs*, 463 F.3d 1163, 1169 (11th Cir. 2006). The Court concludes the Stores have standing on Count 1 as they allege the Orders violate the equal protection rights of businesses in unincorporated parts of the County (a class they fall within).

[4] The parties ignore a question bedeviling federal courts during the pandemic: whether *Jacobson v. Massachusetts*, 197 U.S. 11, 37-38 (1905), informs or controls this analysis. Here, the Court need not weigh in as *Jacobson* effectively applied rational basis review before it had a name. So the result is the same regardless. *E.g.*, *M. Rae, Inc. v. Wolf*, No. 1:20-CV-2366, 2020 WL 7642596, at *6 (M.D. Pa. Dec. 23, 2020).

[5] The Court recognizes Order 7 is not an ordinance. Yet neither party argues this fact is relevant as it relates to the applicable constitutional standard.

Count 1 seeks to vindicate fundamental rights.  Such an assertion would fall short anyway.  *Id.*  So Order 7 must pass the rational basis test.  *See Sandy Springs*, 965 F.3d at 1275.

"Under rational basis review, a law must be rationally related to a legitimate governmental interest and it 'must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification' between persons." *Jones v. Governor of Fla.*, 950 F.3d 795, 809 (11th Cir. 2020) (quoting *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993)).  Federal courts do not overturn state legislative action "unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational." *Id.* (quoting *Vance v. Bradley*, 440 U.S. 93, 97 (1979)).  At bottom, courts ask "whether the legislature could have conceived of a rational basis for the classification it drew." *Id.*

While it might not be "toothless," the rational relation test is "highly deferential to government action." *Id.* (citation omitted).  In fact, under this review, an ordinance strolls into court "bearing a strong presumption of validity." *Beach Commc'n*, 508 U.S. at 314.  So "those attacking the rationality of the legislative classification have the burden to negative every conceivable basis which might support it." *Id.* at 315 (cleaned up).  That's a tough task.

5

For its interest, the County points to Order 7. It seeks to protect "the public health, safety and welfare" of people in the County during the pandemic by requiring that masks be worn inside businesses "to slow the spread of COVID-19 where social distancing is not possible." (Doc. 67-8 at 2). This is a legitimate governmental interest. *See S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613 (2020) (Roberts, C.J., concurring); *Jacobson*, 197 U.S. at 37-38.[6]

Having concluded the County had a legitimate interest, the Court turns to whether Order 7 is rationally related.

As a general matter, a mask mandate is rationally related to the County's legitimate governmental interest. The Stores don't challenge this conclusion much. And for good reason. It would be difficult to contend with a straight face that a mask requirement does not bear a rational relation to protecting people's health and preventing the spread of COVID-19. The Stores do not point to a single court holding otherwise. *Cf. Stewart v. Justice*, No. 3:20-0611, 2020 WL 6937725, at *5 (S.D.W.V. Nov. 24, 2020) (holding a statewide COVID-19 mask mandate had "a rational basis" and "a real and substantial relation to this public health crisis"). Some may disagree with the

---

[6] *See, e.g., In re Abbott*, 954 F.3d 772, 795 (5th Cir. 2020) (A state's "interest in protecting public health during [a global pandemic] is at its zenith."); *Talleywhacker*, 465 F. Supp. 3d at 537; *World Gym v. Baker*, 474 F. Supp. 3d 426, 432 (D. Mass. 2020).

public health efficacy of mask orders.  But federal courts do not sit in a policy-checking capacity to second guess the wisdom of state legislative acts.  *Beach Commc'ns*, 508 U.S. at 313 (clarifying "equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices").  So the mask mandate itself bares a rational relation to the County's interest.

With that decided, the inquiry narrows onto the crux of the Stores' theory—Order 7's classification between businesses in incorporated and unincorporated parts of the County is irrational.  Best the Court can tell, the Stores contend Order 7 is irrational because any mask mandate applying on less than a Countywide basis could not effectively accomplish its goal (i.e., protecting people within the County from COVID-19).  So the Stores say imposing Order 7 only on unincorporated areas treats them worse for an irrational reason.  What's more, they argue the data and reasons given for Order 7 contemplated the entire County, not just unincorporated parts.

The Stores' position fails for a host of reasons.

To start, the County contends it sought to protect public health through the least restrictive means.  In doing so, it adopted Order 7, which demanded masks in unincorporated areas, allowing incorporated regions to opt in.  The County says part of the reason was specifically to protect the health of people in unincorporated areas.  The Stores call this "sleight of hand" and spill much ink arguing over how Order 7 contemplated, and the Commissioners knew,

7

COVID-19 affects the entire County, not just unincorporated parts.  Put simply, however, the Stores misunderstand the basics of rational basis review. The "*actual* motivations of the enacting governmental body are entirely irrelevant." *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995); *Beach Commc'ns*, 508 U.S. at 315.  What's more, governmental decisionmakers need not "articulate any reason for their actions." *Haves*, 52 F.3d at 921.  Instead, the burden is on the Stores to negate "every conceivable basis" supporting Order 7. *Beach Commc'ns*, 508 U.S. at 315.  So Order 7 "is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *Id.*  In other words, the Court cannot simply disregard County's offered explanation for protecting the health of people in unincorporated areas like the Stores demand.  And the Court must recognize how Order 7 is rationally related to protecting the health of people in unincorporated parts of the County.

Likewise, the Stores apparent argument that Order 7 cannot be rational because it's less effective than if applied Countywide doesn't hold water. Federal courts cannot strike down legislative actions simply because judges might think up more productive or practical solutions.  Over the years, the Supreme Court expressed this in countless iterations:

> In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are

imperfect.  If the classification has some reasonable basis, it does not offend the Constitution simply because the classification is not made with mathematical nicety or because in practice it results in some inequality.  The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific.

*Dandridge v. Williams*, 397 U.S. 471, 485 (1970) (cleaned up).  To hold otherwise would harken back to the days when judges wielded the Fourteenth Amendment as a tool to tinker with legislation they didn't like.  *See id.* at 484-86.  But that constitutional theory slipped out of practice and into casebooks nearly a century ago.

What's more, even if what happened at the hearings were determinative, it reveals the County did not irrationally treat areas different.  The Complaint provides hundreds of pages of hearing transcripts.  Confusingly, however, neither party notes the only instance the Court can find where Commissioners addressed the reason Order 7's predecessor only applied to unincorporated areas.  In a July hearing, some Commissioners and the County's attorney discussed their reasoning.  (Doc. 67-3 at 114-16).  They considered two options—to either (1) include incorporated areas and allow them to opt out or (2) not include incorporated areas and allow them to opt in.  The Commissioners noted they normally use the former option.  But ultimately, the County chose the latter.  And their explanation was that it didn't matter much

because both options permitted the municipalities to follow the County's lead or choose different approaches as each saw fit for their own city.  Motivating the decision was an understanding that Naples had an upcoming city council meeting.  And the Commissioners worried about including the city in an Order it may disagree with and later opt out from.  The attorney also wondered how the County could enforce Order 5 within Naples' city limits.  So in the end, the Commissioners allowed the municipalities to decide whether they preferred to opt in or chart a different course.  This is far from irrational decision-making by a legislative body.[7]

Still, this leaves the Stores' broad, conclusory argument Order 7 violates equal protection because it is underinclusive and could include businesses in municipalities.  But again, the problem for the Stores is decades of well-settled understanding of rational basis review.   The Supreme Court rejected the Stores' there-can't-be-lines-drawn-unless-they're-perfect logic.  *Vance*, 440 U.S. at 108 ("Even if the classification involved here is to some extent both underinclusive and overinclusive, and hence the line drawn by Congress imperfect, it is nevertheless the rule that in a case like this perfection is by no

---

[7] While unaddressed by the parties, it appears Naples eventually instituted its own mask mandate, which is like Order 7.  This would undermine the Stores' equal protection argument.  Yet the Court will not take judicial notice of this fact because no party requested it, and Naples did not yet add that action to its Code of Ordinances.  *See generally* Naples Code of Ords. (last updated January 18, 2021).

means required." (cleaned up)).   So even if Order 7 could include municipalities, that on its own is not an equal protection violation.

Likewise, it has been known for over a century that different treatment of individuals in different geographical areas does not necessarily implicate the Equal Protection Clause.  *McGowan v. Maryland*, 366 U.S. 420, 427 (1961) ("But we have held that the Equal Protection Clause relates to equality between persons as such, rather than between areas and that territorial uniformity is not a constitutional prerequisite."); *Ft. Smith Light & Traction Co. v. Bd. of Improvement of Paving Dist. No. 16 of City of Ft. Smith, Ark.*, 274 U.S. 387, 391 (1927) ("The Fourteenth Amendment does not prohibit legislation merely because it is special, or limited in its application to a particular geographical or political subdivision of the state."); *Ocampo v. United States*, 234 U.S. 91, 98-99 (1914).   Yet the Stores point to nothing standing for the proposition that a county must regulate uniformly among its incorporated and unincorporated areas.

The final aspect buttressing the County's decision is Florida law, which apparently the Commissioners considered.  *See* (Doc. 67-3 at 114 (The County attorney stated municipalities, even if included, "have the right to opt out.")).  The parties touch on home rule and police powers, along with the County's status as a non-charter.  Yet they talk past why this is relevant to the rationality of the County only including unincorporated areas in Order 7.

Florida's relationship with its counties and municipalities is often complicated as it relates to which body has what power to act when. Sometimes the answer turns on whether a county has a charter. It's undisputed the County doesn't. Without getting too far into the weeds, it is enough to recognize that a non-charter county has no power to supersede a municipal ordinance. Fla. Const., art. VIII, § 1(f) (A non-charter county "ordinance in conflict with a municipal ordinance shall not be effective within the municipality to the extent of such conflict."); *Classy Cycles, Inc. v. Bay Cnty.*, 201 So. 3d 779, 782 (Fla Dist. Ct. App. 2016) ("The powers granted to non-charter counties and municipalities therefore differ, with [municipalities] having greater power to enact ordinances than [counties]."). That distinction is relevant here. *See Home Builders & Contractors Ass'n of Palm Beach Cnty., Inc. v. Bd. of Cnty. Comm'rs of Palm Beach Cnty.*, 446 So. 2d 140 (Fla. Dist. Ct. App. 1983) (holding a county did not violate equal protection when it charged development fees for building in unincorporated areas, but not incorporated ones, after cities opted out).

Even if the County imposed Order 7 on incorporated areas, those municipalities would have the power to opt out. In the same vein, those cities had the ability to adopt stricter standards if they chose. So it made no difference the County allowed the cities to opt in because (either way) the municipalities retained ultimate authority to decide if they would be bound by

Order 7. There is no indication the outcome would be different simply because emergency powers are at issue. State law confers that power on "each political subdivision of the state." Fla. Stat. § 252.32(1)(b) (2020); *see id*. at § 252.38(1); *id*. at § 252.46(1). A political subdivision—in this context—is "any county or municipality." *Id*. at § 252.34(9). And state courts construing these provisions conclude counties and municipalities both hold these emergency powers. *Miami-Dade Cnty. v. Miami Gardens Square One, Inc.*, No. 3D20-1512, 2020 WL 6472542, at *5 (Fla. Dist. Ct. App. Nov. 4, 2020). The decision to only impose Order 7 on unincorporated areas while permitting municipalities to opt in, therefore, was rational.

In sum, Order 7 bears a rational relation to the County's legitimate governmental interest, so the Stores' facial challenge fails. Order 7's choice to include unincorporated areas and permit incorporated cities to opt in was not irrational. Instead, the County merely gave municipalities the option to adopt the mask mandate. At bottom, the Stores' argument is a simple disagreement with the County's judgment. Yet it is not this Court's function to review the decisions of elected officials to decide if they are wise or best fit to solve a problem. *Beach Commc'ns*, 508 U.S. at 313; *Leib v. Hillsborough Cnty. Public Transp. Comm'n*, 558 F.3d 1301, 1306 (11th Cir. 2009). This is particularly true for legislative health responses to a pandemic, when "latitude must be especially broad." *S. Bay*, 140 S. Ct. at 1613-14 (cleaned up); *see also Calvary*

*Chapel Dayton Valley v. Sisolak*, 140 S. Ct. 2603, 2614 (2020) (Kavannaugh,

J., dissenting) ("Under the Constitution, state and local governments, not the

federal courts, have the primary responsibility for addressing COVID-19

matters such as quarantine requirements, testing plans, mask mandates, . . .

and the like.").

### 2. *As-Applied Challenge*

Next, the Stores bring an as-applied challenge.  As the Court sees it, the

Stores bring a "class-of-one" claim.  This attack focuses on the past enforcement

of Order 5 and application of Order 7.  Specifically, the Stores contend the

County selectively enforced, and continues to enforce, the Orders against them

and other businesses in unincorporated areas.  And their treatment differed

from businesses in incorporated parts of the County, who need not comply.

Before beginning, the Court should correct the Stores' misinterpretation.

The Stores point to a previous Court Order, which concluded they have

standing to bring an as-applied challenge and Order 7 did not moot it.  (Doc.

63 at 9-10).  But standing and mootness are simply threshold jurisdictional

questions.  *Frulla v. CRA Holdings, Inc.*, 543 F.3d 1247, 1250 (11th Cir. 2008).

A finding for the Stores on both issues just means they can *proceed* to the

merits, not that they will *succeed* once there.  *Warth v. Seldin*, 422 U.S. 490,

498 (1975); *North Carolina v. Rice*, 404 U.S. 244, 246 (1971).  Because prior

briefing was insufficient, the Court never made it past Article III's front door.

14

(Doc. 63 at 13-14).  So unlike the Stores suggest, the Court never ruled they stated an as-applied equal protection claim.

With that resolved, the Court turns to the merits.

Of course, "the Equal Protection Clause requires government entities to treat similarly situated people alike." *Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1313 (11th Cir. 2006).  These claims are not limited to parties within "a vulnerable class." *Id.*  All individuals enjoy that protection. *Id.* at 1313-14. So plaintiffs can bring an equal protection claim for selective enforcement of local ordinances. *Id.* at 1314.

To make such a claim, there must be a showing plaintiff (1) "was treated differently from other similarly situated individuals, and (2) that the defendant unequally applied a facially neutral ordinance for the purpose of discriminating against" plaintiff.[8]  *Leib*, 558 F.3d at 1307.  Put another way, plaintiff must show "it has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1202 (11th Cir. 2007) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

---

[8] The Eleventh Circuit recognized a "newer trend" in the law to permit these claims "without a necessary showing of ill will or discriminatory purpose." *Rainbow City*, 434 F.3d at 1313. That distinction is irrelevant here.

A similarly situated showing "requires some specificity." *Rainbow City,* *434 F.3d at 1314*.  So similarly situated "comparators must be '*prima facie* *identical in all relevant respects.*'" *Grider v. City of Auburn, Ala.*, 618 F.3d *1240, 1264 (11th Cir. 2010)* (quoting *Griffin*, 496 F.3d at 1202).  "Different treatment of dissimilarly situated persons does not violate the equal protection clause." *E&T Realty v. Strickland*, 830 F.2d 1107, 1109 (11th Cir. 1987).

The Stores as-applied challenge fails because they do not point to any similarly situated individual who is treated different.  *See Griffin*, 496 F.3d at *1205* ("A 'class of one' plaintiff might fail to state a claim by omitting key factual details in alleging that it is 'similarly situated' to another.").  In fact, the Stores do not identify a single comparator who was subject to disparate treatment.  *See Leib*, 558 F.3d at 1307 (emphasizing "plaintiffs are not permitted simply to rely on broad generalities in identifying a comparator" (cleaned up)).  While the Stores say businesses (apparently all of them) in unincorporated and incorporated areas are similarly situated, they never bother to explain why.  This falls woefully short of the requisite showing on the similarly situated question.

Even leaving that aside, the Stores' position misses the forest for the trees.  The Stores say over and over businesses in unincorporated and incorporated areas are similarly situated because they're all in the County.  Yet the location distinction (which undergirds this challenge) is precisely what

makes the groups dissimilar. Businesses in incorporated areas are not similarly situated because they are in incorporated areas. To be sure, those businesses are inside the County. But they are also within municipalities (i.e., Naples, Marco Island, and Everglades City). So those businesses are subject to different ordinances than entities in unincorporated parts of the County, and vice versa. As explained above, this distinction is relevant under Florida law. And the Stores do not try to show how they are similarly situated.

Sometimes it helps to address what is actionable. In *Lexra, Inc. v. City of Deerfield Beach*, a business stated a class-of-one claim. 593 F. App'x 860 (11th Cir. 2014). There, last call for bars in unincorporated parts of a county was 4 a.m., while a city within the county had a 2 a.m. closing time. The city annexed several bars, who were then subject to the earlier cutoff. Yet the city agreed with a separate bar that it could remain open until 4 if the bar did not oppose annexation. As the city treated similarly situated individuals (annexed bars within the city) different, the arrangement ran afoul of equal protection.

That situation is not present here. There is no suggestion in the Complaint or briefing that the Stores have been treated any different than another business in unincorporated parts of the County. "The Equal Protection Clause does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). Here, the Stores

failed to show they have been treated differently than someone similarly situated.  Even if the Complaint is enough on that ground, the Stores would need to clear the rational basis hurdle.  For the reasons above, the Court concludes they cannot.  So the Stores' as-applied challenge to Order 7 fails too.

With each aspect of the equal protection claim falling short, Count 1 is dismissed with prejudice.

## B. First Amendment

No state can abridge "the right of the people peaceably to assemble, and to petition the government for a redress of grievances."  U.S. Const. amend I.  In Count 2, Oakes and Oakes Farms allege Order 7 facially and as-applied violates their First Amendment rights to assemble and associate at Seed to Table.  Neither the Complaint nor briefing makes much effort to differentiate between the two challenges.  All the same, the Court tackles standing first.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101-02 (1998).  Then, it considers the merits.

### 1. Oakes' Standing

Oakes lacks standing to challenge Order 7 on First Amendment grounds.  While the County questions Oakes' standing, he never responds.  Given he has the burden on that issue, this is problematic.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) ("The party invoking federal jurisdiction bears the burden.").

To have Article III standing, a plaintiff must plead (and later prove) injury, causation, and redressibility. *E.g.*, *id.* at 560-61. Probably the most important element is the first one—injury in fact. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). An injury must be both (1) "concrete and particularized" and (2) "actual or imminent." *Lujan*, 504 U.S. at 560. Concrete injuries are "*de facto*" harms (i.e., they "actually exist" and are "real," "not abstract"). *Spokeo*, 136 S. Ct. at 1548 (citations omitted). Particularized injuries "must affect the plaintiff in a personal and individual way." *Id.* (citation omitted). And injuries are imminent if they are "*certainly* impending," so "allegations of *possible* future" injuries are not enough. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (cleaned up).

If the Court can construe an injury on Oakes' barebones allegations, it is not concrete, particularized, or imminent. For Oakes, the Complaint just says he "regularly participates in these assemblies, discussions, and events" at Seed to Table. (Doc. 67 at 14). Yet Oakes was never cited for violating Order 5. Order 7 cannot be applied to him because it only permits the County to cite businesses. (Doc. 67-8 at 5) (stating "citations issued pursuant to this Order shall be as to businesses only, and not individuals"). And nothing suggests any Order ever prevented Oakes from assembling or that Order 7 will do so. In short, Oakes has not alleged a sufficient injury-in-fact to establish standing. *See Cangelosi v. Edwards*, No. 20-1991, 2020 WL 6449111, at *4 (E.D. La. Nov.

3, 2020) (holding plaintiff did not have standing to challenge mask mandate only enforced against businesses).[9]

Because Oakes lacks standing, Count 2 is dismissed without prejudice as to him.[10] *Gardner v. Mutz*, 962 F.3d 1329, 1343 n.11 (11th Cir. 2020).

### 2. *Oakes Farms' Standing*

As much as the County challenges Oakes Farms' standing, it falls short. Oakes Farms alleges its rights have been, and will be, infringed because of Order 7's application (both facially and as applied). Previously, the County issued citations to Oakes Farms for mask violations. And Order 7 applies to businesses until April. Thus, Oakes Farms has standing to lodge both challenges. *See Tabernacle Baptist Church, Inc. of Nicholasville v. Beshear*, 459 F. Supp. 3d 847, 851 n.3 (E.D. Kent. 2020). With that decided, the Court turns to the merits.

### 3. *First Amendment Challenge*

Oakes Farms contends Order 7 infringes on its right to assemble and associate. As the argument goes, people cannot assemble at Oakes Farms

---

[9] *See also Geller v. Cuomo*, 476 F. Supp. 3d 1, 16-18 (S.D.N.Y. 2020); *Minn. Voters Alliance v. Walz*, No. 20-CV-1688 (PJS/ECW), 2021 WL 83271, at *1 (D. Minn. Jan. 11, 2021); *Delaney v. Baker*, No. 20-11154-WGY, 2021 WL 42340, at *9-10 (D. Mass. 2021); *Murphy v. Lamont*, No. 3:20-CV-0694 (JCH), 2020 WL 4435167, at *5-6 (D. Conn. Aug. 3, 2020).

[10] Even if Oaks had standing, his claim would fail for the reasons below.

unless they wear a mask, thus Order 7 violates the First Amendment because it effectively eliminates their right to assemble and associate.

This claim is a head scratcher. As noted, anyone can freely assemble and associate at a business within the County if they are socially distanced. And if they cannot do so, a mask must be worn. So Order 7 does not prohibit assemblies; rather, it places a minor restriction on the way they occur. While Oakes Farms says this impedes the First Amendment, it never elevates the theory beyond conclusory statements unsupported by law. Perhaps this would make sense if brought alongside a claim for mask wearing as compelled speech. But Oakes Farms doesn't advance that claim and makes no allegation on communicative aspects of masks.[11] All the same, the Court turns to the merits.

The County argues the First Amendment does not protect a general right to associate socially. That is true. *Henry v. DeSantis*, 461 F. Supp. 3d 1244, 1254 (S.D. Fla. 2020) (quoting *City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989)). But Oakes Farms' claim is not so narrow. It focuses on rights to hold political rallies and express political ideas, which the First Amendment protects. *See Shuttlesworth v. City of Birmingham, Ala.*, 394 U.S. 147, 152

---

[11] Even if they did, such compelled-speech claims have not fared well. *E.g.*, *Antietam Battlefield KOA v. Hogan*, 461 F. Supp. 3d 214, 236-37 (D. Md. 2020); *Parker v. Wolf*, No. 20-cv-1601, 2020 WL 7295831, at *11-15 (M.D. Pa. Dec. 11, 2020)

(1969).  Even assuming Oakes Farms relies on protected rights though, Order 7 does not violate those rights under the applicable standard of review.[12]

Order 7 is content neutral.  It applies equally to all businesses in unincorporated areas whether open for commerce or a political assembly.  And its purpose—protecting public health and preventing the spread of COVID-19—is unrelated to speech.  *See Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).  So Order 7's incidental effect on speech is subject to intermediate scrutiny.  *Ramsek v. Beshear*, 468 F. Supp. 3d 904, 915-18 (E.D. Kent. 2020); *Talleywhacker*, 465 F. Supp. 3d at 541*; Antietam*, 461 F. Supp. 3d at 234-36.

Like just about every right, First Amendment protections are not absolute.  *E.g.*, *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 802 (2010) (Scalia, J., concurring) ("No fundamental right—not even the First Amendment—is absolute.").  For that reason, First Amendment rights are "subject to reasonable time, place, or manner restrictions."  *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984).  To stand, such regulations must (1) have a substantial government interest; (2) be "narrowly tailored to serve" that interest; and (3) "leave open ample alternative channels for communication of the information."  *McCullen v. Coakley*, 573 U.S. 464, 477

---

[12] There is uncertainty over what standard to apply to pandemic related First Amendment challenges.  *See Delaney*, 2021 WL 42340, at *11-12.  Again, the Court need not enter the fray.  While the County advocates for rational basis review (like *Jacobson*), Order 7 satisfies a higher level of scrutiny.

(2014) (quoting *Ward*, 491 U.S. at 791); *see also Frisby v. Schultz*, 487 U.S. 474, 484 (1988) (applying intermediate scrutiny in a right to assemble case).

Order 7 easily aces that test.

First, the County's interest in preventing the spread of COVID-19 and protecting individuals' health is substantial. *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) (per curiam) ("Stemming the spread of COVID-19 is unquestionably a compelling interest.").

Second, Order 7 is narrowly tailored to serve the County's interest. An ordinance is narrowly tailored "so long as the regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." *Ward*, 491 U.S. at 782-83. Like above, the mask mandate promotes the County's interest more effectively than no requirement. The officials providing data to the County recommended masks and social distancing for their effectiveness. What's more, at this point in the pandemic, just about every public health body promotes that same advice. Perhaps the County could have advanced its interest through a less restrictive method. But even if it could, that would not be controlling. *Ward*, 491 U.S. at 798 ("Lest any confusion on the point remain, we reaffirm today that a regulation of the time, place, or manner of protected speech . . . need not be the least restrictive or least intrusive means of doing so."). What's more, Order 7 is not substantially broader than necessary. The County does not ban assemblies

23

(like some governments tried).  Nor has the County restricted the size of crowds (as others have done).  Instead, Order 7 carefully limited the manner of assemblies through distancing or wearing a mask to prevent the spread of COVID-19 and protect public health.  In other words, it is narrowly tailored.  *See Pine v. City of W. Palm Beach, Fl.*, 762 F.3d 1262, 1270-73 (11th Cir. 2014).

And third, Order 7 leaves open ample methods of communication.  In fact, it gives Oakes Farms the opportunity to assemble and associate when it wants.  Oakes Farms can have assemblies of any size and association of any type.  The only snag is that individuals assembling must exercise a minor degree of caution by social distancing or wearing masks.  Yet that is a reasonable restriction on the manner of assemblies within the County.  During this pandemic, far greater restrictions have left open alternate channels to assemble.  *See Day v. City of Key W. Mayor Teri Johnston*, No. 4:20-cv-10151-JLK, 2020 WL 7711681, at *4 (S.D. Fla. Dec. 29, 2020).  In *Day*, Key West enacted a curfew between 10 p.m. and 6 a.m. for three days around New Years.  Even though plaintiff could not physically assemble, he still had other ways to assemble with friends on social media during the three-day assembly ban.  The alternate channels of assembly and association left open by Order 7 are vast by comparison.

In short, Order 7 does not violate the First Amendment.  So Count 2 fails.  And it is dismissed with prejudice as to Oakes Farms.

## C. Supplemental Jurisdiction

The remaining claims (Counts 3 and 4) are state-law claims. While no party addresses whether the Court should continue to exercise supplemental jurisdiction, the Court can raise the issue. *E.g.*, *Miller v. City of Fort Myers*, 424 F. Supp. 3d 1136, 1152 (M.D. Fla. 2020). Having dismissed all federal claims, the Court declines to exercise supplemental jurisdiction over the remaining claims. 28 U.S.C. § 1367(c)(3); *see Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018) ("When all federal claims are dismissed before trial, a district court should typically dismiss the pendant state claims as well.").

"State courts, not federal courts, should be the final arbiters of state law." *Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997). So when all federal claims are dismissed pretrial, precedent "strongly encourages" declining supplemental jurisdiction. *Mergens v. Dreyfoos*, 166 F.3d 1114, 1119 (11th Cir. 1999) (citation omitted). In deciding whether to do so, courts consider these factors: "judicial economy, convenience, fairness, and comity." *Baggett*, 117 F.3d at 1353.

First, judicial economy weighs against exercising supplemental jurisdiction. Judicial economy typically is "served when issues of state law are resolved by state courts." *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1288 (11th Cir. 2002).

Second, convenience points to retaining jurisdiction.  Like the Eleventh Circuit noted, "as far as the parties are concerned, it would be most convenient to try every claim in a single forum." *Ameritox, Ltd. v. Millennium Laboratories, Inc.*, 803 F.3d 518, 539 (11th Cir. 2015).

Third, fairness considerations do not favor jurisdiction here.  Each "litigant who brings supplemental claims in [federal] court knowingly risks the dismissal of those claims." *Id.*  Plaintiffs are free to refile their state-law claims in state court.  So "fairness concerns do not weigh in favor of retaining jurisdiction." *See id.* at 540.

And fourth, comity cuts against exercising supplemental jurisdiction.  "It is a bedrock principle that 'needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.'" *Id.* (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)).  The rest of this case raises technical questions of how Florida's local governments should legislate to protect the public during a state of emergency, along with how it enforces its orders.  Comity is well-served by allowing Florida—not federal—courts to resolve those matters.

After weighing the above, the Court declines to exercise supplemental jurisdiction.  So Counts 3 and 4 are dismissed without prejudice to Plaintiffs refiling those claims in state court. *Shabanets*, 878 F.2d at 1296-97.

## D.  Conclusion

Our Constitution doesn't take sick days.  Nor do its protections evaporate during times of emergency.  Yet these principles cannot save Plaintiffs' federal claims—which misunderstand both the rights enshrined by the Constitution and this Court's place in the framework it established.  Because Order 7 does not violate the First or Fourteenth Amendments, and a state court is better positioned to resolve the remaining claims, this case is dismissed.

Accordingly, it is now

**ORDERED:**

1.  Defendants' Motion to Dismiss (Doc. 68) is **GRANTED in part**.

    a.  Count 1 is **DISMISSED with prejudice**.

    b.  Count 2 is **DISMISSED with prejudice** as to Plaintiff Oakes Farms, Inc.  Count 2 is **DISMISSED without prejudice** as to Plaintiff Francis Oakes, III.

    c.  Counts 3 and 4 are **DISMISSED without prejudice**.

2.  The Clerk is **DIRECTED** to enter judgment, terminate any pending motions or deadlines, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on January 27, 2021.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record